## BECK *v.* BECK.

(Decided December 30, 1933.)

*Messrs. George & Leasure,* for plaintiff in error.
*Mr. George D. Klein,* for defendant in error.

SHERICK, P. J.  The present controversy marks the second journey of these litigants to this court.  The narrative of their first pilgrimage may be found in *Beck* v. *Beck,* 45 Ohio App., 507, 187 N. E., 366.  The query now presented for review is indeed an anomalous one, and a full recital of the proceeding is necessary for an understanding thereof.

Velma Beck commenced this action in the Court of

Common Pleas of Coshocton county on September 28, 1931. Its purpose was to procure a divorce and an allowance of alimony. On January 6, 1932, a divorce was granted and alimony allowed. In April of the year 1932, Edgar Beck, the plaintiff in error, commenced an independent action in Coshocton county to vacate and set aside this judgment for fraud, and prayed for leave to file his answer and make a defense to the Coshocton county divorce action. The Coshocton county court dismissed his petition. This court on May 13, 1933, reversed the judgment of dismissal, vacated the judgment, and remanded the cause with instruction to permit the plaintiff in error to file his answer therein as prayed for.

On May 31, 1933, Velma Beck moved for an allowance of temporary alimony, and on June 15 thereafter the plaintiff in error filed an affidavit of prejudice as against the resident trial judge. This matter was treated as an application for a change of venue, which the trial court sustained on June 29, and thereupon certified the case to the Court of Common Pleas of Tuscarawas county. And on July 18, 1933, Edgar Beck filed a motion in that court objecting to the jurisdiction of that court to hear the case. The grounds stated in support of this motion are five in number, all of which pertain to the question of no service having been made upon him as prescribed by law.

On November 3, 1931, Edgar Beck commenced an action for divorce in Ashland county, which had been submitted to the trial court in that county prior to the filing of the motion attacking the jurisdiction of the Tuscarawas county court. Thereafter on July 7, 1933, the Ashland county court granted a decree of divorce to the plaintiff in error. Two further facts should be here referred to. First, the plaintiff in error in the Ashland county court was represented by different counsel. Second, the transcript of the Ashland county divorce action is an exhibit attached to the record in

this proceeding, from which it appears that the defendant in error was personally served with summons issued to the sheriff of Coshocton county. This is at least the recitation of the transcript of docket entries. We do not find any such summons and return among the original papers. The original papers do contain two summonses issued to the sheriff of Muskingum county, each of which recites that Velma Beck was not found. Velma Beck was in default for answer or demurrer to this suit and did not enter her appearance therein. She had been summoned as a witness. It does not appear that she answered this summons or appeared at trial. The decree recites, however, that she had been personally served with summons and a copy of the petition, or by publication.

On August 4 the plaintiff in error filed a supplement to his objections previously filed attacking the jurisdiction of the Tuscarawas county court. The reasons therein advanced are the prior adjudication in Ashland county of all matters litigated or that might have been litigated, and that the decree of that court is therefore *res judicata* of the things herein further attempted to be litigated.

Thereafter on November 27 the court overruled the plaintiff in error's motion, and sustained that of the defendant in error for temporary alimony. It is from these rulings that error is now prosecuted.

In the proceeding previously determined by this court the matter of conflict of jurisdiction between the Coshocton and Ashland county courts was not in issue, but it was then deemed proper to indicate this court's view in that it might be helpful to counsel. We therefore concluded that opinion with this suggestion:

"For the purpose of avoiding a future jurisdictional question, we here suggest, in view of the fact that the record discloses that the plaintiff in error filed an action for divorce against the defendant in error in Ashland county and attempted to procure service of sum-

mons on defendant in error at the time publication was being made in the Coshocton county case, that the plaintiff in error by his petition to vacate the judgment aforesaid has subsequently invoked the jurisdiction of the Coshocton county court. He must therefore be considered as having abandoned Ashland county as his battle ground.''

The defendant in error has relied upon this suggestion, even to the point that she did not enter the Ashland county court to raise the question of its jurisdiction. She does not now question this court's judgment in its reversal of the decree of divorce. On the other hand, the plaintiff in error says that he never abandoned Ashland county as his battle ground, that he never filed his answer in this suit, and that he diligently prosecuted his action in Ashland county. In other words his prayer for leave to answer was but a gesture to entice the court to vacate the decree of divorce, and he then intended what he has since performed, that is, to accept that part of this court's judgment which was favorable to him and reject that part thereof which he considered burdensome. As we now see it, the plaintiff in error, in view of his present claims, takes the position that this court was previously in error in all it did, and he favorably comments on the trial court's reluctance in following this court's direction or suggestion as to jurisdiction. We, therefore, feel constrained not to attempt to vindicate, but will re-assert our former suggestion and our reasons therefor.

For many years it has been considered that *Parish* v. *Parish,* 9 Ohio St., 534, conclusively settled in this state, by virtue of the then statute and public policy, that ''a decree from the bonds of matrimony, although obtained by fraud and false testimony, cannot be set aside on an original bill filed at a subsequent term.'' This was an original bill in chancery in which the jurisdiction of the court entering the decree over the

person of the litigants was not in issue. The statute (Curwen, p. 991) then provided that "no appeal shall be obtained from the decree, but the same shall be final and conclusive." This statute has since been repealed, but upon the theory of public policy, as late as *Bay* v. *Bay,* 85 Ohio St., 417, 98 N. E., 109, decided February 6, 1912, *Parish* v. *Parish* was approved. The case of *Fritz* v. *Fritz,* 9 O. D. (N. P.), 275, 6 N. P., 258, is of interest in that it comments on the broad holding of the *Parish case.*

We would call counsel's attention to the fact that the Constitution of this state was amended in numerous particulars in 1912, and was on September 3 adopted by the people, as amended. Section 6 of Article IV now reads in part:

"The courts of appeals shall have * * * jurisdiction * * * to review, affirm, modify or reverse the judgments of the courts of common pleas, superior courts and other courts of record within the district as may be provided by law, * * *."

The people did not see fit to except from that mandate a judgment of divorce, although they were well acquainted with the theory of public policy and the previous sanctity of divorce decrees. We do not have the temerity necessary to write such an exception into the Constitution.

In *Zonars* v. *Zonars,* 101 Ohio St., 518, 130 N. E., 943, the court considered the finality of a divorce decree in so far as the right to have it reviewed in a proceeding in error was concerned, and it was held that it might be reviewed. A decree of divorce, its finality and sanctity, was placed upon the same basis as any other judgment. In other words the court recognized that the old theory of public policy could not endure as against the people's subsequent constitutional expression. The court, in *Wells, Jr.,* v. *Wells,* 105 Ohio St., 471, 138 N. E., 71, again disregards the finality of a decree of divorce.

The case of *Love* v. *Love*, 17 Ohio App., 228, also deals with the same subject-matter, but in a different situation. It is therein held that:

"A decree granting a divorce may, in the court's discretion, for good cause, be opened up and vacated during the term wherein the decree was rendered."

It appears to us that a departure from a long-established rule—like public policy decreeing the finality of a divorce decree—is a matter of more than considerable importance in this day of profuse marital differences, and hence the Supreme Court's refusal to sustain a motion to certify the *Love case* is of a special significance.

Undoubtedly the court in the *Zonars case* had in mind Section 11634, General Code, which has to do with a motion to vacate a judgment within term. Section 11635, General Code, provides the procedure in other cases, that is by petition to vacate after term within the time limit established by Section 11640, General Code. The petition to vacate in the present instance is grounded upon Section 11635, that is upon fraud, and upon Section 11632, General Code, which deals with the opening of a judgment obtained by service of publication. This court reversed the judgment upon the theory that the Coshocton county court had no jurisdiction of the person of the plaintiff in error. We recognize that authorities are listed under the last-named section, which hold that this section does not apply to divorce decrees. The statute does not so provide. Examination of these cases—all decided before 1912—discloses that they predicate their holdings on the theory of public policy.

These statutes are general statutes, none of which provides an exception in the matter of divorce decrees. We are unable to see any distinction in principle between a right of review of a divorce decree in an error proceeding, or a motion to vacate such a judgment within term, and a petition to vacate after term. All

were in the past considered not to apply to divorce decrees by virtue of public policy; and not upon statutory inhibition. If the constitutional change supersedes the rule of public policy, as it does, there surely is no sound reason to break from the old rule in two instances and cleave to the rule on a petition to vacate after term.

In *Bascom* v. *Bascom,* 7 Ohio, part 2, 125, Wright, 632, the court said in discussing an attack upon a divorce decree that "such anomalous mischief cannot be ingrafted on the practice of our courts, except by clear and explicit legislative enactment." Surely the constitutional provision is of greater solemnity than legislative act, and creates that which was wanting at the time of decision of the *Bascom case.* It was then urged and considered that remarriages and subsequent births would create untold hardships. The Legislature should care for the legitimacy of children in such cases, and those that hastily contract new matrimonial alliances after the entering of a decree of divorce do not need or deserve the protection of a court's decree. They should bear the ills they have rather than fly to others they know not of. This should be especially true where fraud has been practiced upon a court and jurisdiction of the person is wanting. To our notion, in the great majority of cases, the hastily divorced spouse is deserving of more consideration than the new mate.

The plaintiff in error asserts that the provisions of Section 11983, General Code, are mandatory, and that a defendant in a divorce case can not waive the issuance and service of summons by his own act. This claim is adversely decided in *Black* v. *Black,* 110 Ohio St., 392, 144 N. E., 268. It was therein said:

"Upon the question of jurisdiction it need only be further stated that the defendant, not merely by his pleadings, but by his appearance in open court, waived

any question of jurisdiction over his person, as is well settled by a long line of decisions of this court."

It is further urged that the petition to vacate was an independent proceeding and not an entrance of appearance in the divorce action. This contention is likewise disposed of by two Ohio authorities. *Watson* v. *Paine,* 25 Ohio St., 340, announces that:

"A party, by making application to vacate or modify a judgment under Section 535 or 536 [Sections 5357 and 5358, Revised Statutes of 1884, now Sections 11634 and 11635, General Code], voluntarily submits himself to the jurisdiction of the court, and is bound by any judgment or order which may be afterward rendered in the action."

*Bever* v. *Beardmore,* 40 Ohio St., 70, at page 78, in speaking of a petition to vacate after term, says:

"It is not of itself a civil action; but a special proceeding in an action to effect a judgment rendered therein at a former term of the same court. * * * It is professedly an application for a new trial."

We are conversant with the well-settled rule, that, as between courts of concurrent jurisdiction, the one whose power is first invoked by the institution of proper proceedings and the service of process acquires the right to adjudicate the controversy to the exclusion of all other courts of concurrent jurisdiction. This being true, it must follow that the Ashland county court first obtained jurisdiction to the exclusion of the Coshocton county court. The transcript of the docket of the Ashland county case discloses, and the decree also recites, that personal service was had upon the defendant in error. In that respect the decree imports absolute verity. But it must be remembered that before that cause was submitted on its merits to the Ashland county court, the defendant in error invoked the jurisdiction of the Coshocton county court by petitioning it to vacate its judgment, and that he be let in to answer to the petition of the plaintiff therein.

· The generally acknowledged rule hereinbefore recognized has for its basic reason the thought that two courts cannot be permitted at the same time to entertain jurisdiction of the same subject-matter between the same parties. If this were not true, hopeless confusion would result. The law therefore recognizes that where a party has different remedies he may make choice thereof; and where a party has different jurisdictions in which he may obtain relief he may choose the venue of his action. But it does not follow that having once chosen he may not thereafter abandon his first choice. He may ask to have his cause dismissed without prejudice and lay his venue elsewhere if the law has created jurisdiction of the subject-matters in another court of concurrent jurisdiction. Section 76, appearing in 7 Ruling Case Law, 1043, and authorities there noted, state the thought we entertain:

"Jurisdiction of the person may be acquired by consent: therefore where a court has jurisdiction of the subject-matter of a suit, the defendant therein may waive the lack of jurisdiction as to his person. As to what may amount to a waiver of his right to object, the general rule is that if a defendant, though not served with process, takes such a step in an action, or seeks such relief at the hands of the court as is consistent only with the hypothesis that the court has jurisdiction of the cause and of his person, he thereby submits himself to the jurisdiction of the court, and is bound by its action as fully as if he had been regularly served with process. * * * Where a party to a judicial proceeding admits, by some act or conduct, the jurisdiction of the court, he may not thereafter, simply because his interests have changed, deny the jurisdiction, especially where the assumption of a contrary position would be to the prejudice of another party who has acquiesced in the position formerly taken."

A litigant has no right to trifle with the orders of a court, whose jurisdiction he has solicited and upon

which he has conferred jurisdiction of his person by his voluntary act. By subsequently entering the Coshocton court the plaintiff in error abandoned the venue previously laid in Ashland county. And in his subsequent procedure in Ashland county the plaintiff in error practiced a deception upon that court amounting to fraud. We have well in mind that in this proceeding we are not at liberty to determine the validity of the Ashland county decree, but we are unable to refrain from mentioning the question decided in *Dunham* v. *Dunham*, 162 Ill., 589, 35 L. R. A., 70, 44 N. E., 841, wherein it was held that any deception practiced by a party to a divorce suit on the court in which it is brought or pending, in a matter affecting its jurisdiction, or its discretion to proceed or not to proceed to a final determination of the cause, is sufficient to invalidate a decree of divorce on the grounds that it was procured by fraud. It was the duty of the plaintiff in error to apprise the court in Ashland county of the fact that he had subsequently submitted his person to the jurisdiction of the Coshocton county court.

We have it within our power, however, to apply the maxim of law that "no man should take advantage of his own fraud." And it is the judgment of this court that one may not invoke the jurisdiction of a tribunal having jurisdiction of the subject-matter of the suit, then submit his person to the jurisdiction of that court, and thereafter be heard to deny the jurisdiction of that court over his person. In such case his acts and conduct should and do estop him from so doing. Had there been a want of jurisdiction of the subject-matter the holding would be quite the contrary.

The question has not here been made as to whether or not the orders complained of are final in their nature, from which error may now be prosecuted. We have not considered that question, but in the interest of shortening a protracted matter we treat the orders as final in character.

The cause is affirmed and remanded to the Court of Common Pleas of Tuscarawas county for further proceedings provided by law; with the further remark expressed in 7 Ruling Case Law, 1040, "that a court taking jurisdiction of a cause by change of venue takes precisely the same jurisdiction which would have obtained in the court from which the venue is changed."

*Judgment affirmed and cause remanded.*

LEMERT and MONTGOMERY, JJ., concur.